# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: NOVEMBER 1, 2007
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2005-SC-000878-MR

KEITH B. HARRIS          APPELLANT

V.

ON APPEAL FROM CALDWELL CIRCUIT COURT
HONORABLE BILL CUNNINGHAM, JUDGE
NO. 05-CR-00027

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Keith B. Harris appeals as a matter of right[1] from a circuit court judgment convicting him of two counts of first-degree Trafficking in a Controlled Substance and sentencing him to thirty-nine years' imprisonment. He contends that the trial court violated his due process rights by denying his request to withdraw a stipulation at trial regarding the chain of custody of a quantity of cocaine, which the Commonwealth alleged had been sold by Harris. We find no error and affirm.

## I. FACTS.

The grand jury indicted Harris on two counts of first-degree Trafficking in a Controlled Substance, Second Offense. A few days before the date originally set for trial, the Commonwealth filed a motion for a continuance, stating that it had been unable

---

[1] Ky. Const. § 110(2)(b).

to serve a subpoena upon a witness who would testify to part of the chain of custody—specifically, to transporting the controlled substances at issue to the regional crime laboratory for testing. In the alternative, the Commonwealth asked that the court issue a pretrial ruling that it could proceed without this witness's testimony and still sufficiently establish the chain of custody, further stating that:

> As grounds for this alternative request, the Commonwealth will state that [this witness] was the evidence officer at the Pennyrile Narcotics Task Force at the time these drugs were logged into evidence, that said drugs were logged into evidence in a sealed package, and that [this witness] only picked up the sealed package and delivered it in the same condition to the Madisonville Laboratory. The Officer putting the drugs into the evidence locker will testify as to the sealed nature of this package, and the laboratory person receiving the drugs in Madisonville, Kentucky, can testify that the package was in its same condition when received.

At the hearing on this motion, the parties informed the court that they had reached an agreement whereby Harris would stipulate that the chain of custody was established and that the substance submitted was cocaine. In exchange for Harris's agreement to stipulate, the Commonwealth agreed to recommend a one-year reduction in Harris's ultimate sentence, provided that Harris received a conviction and the recommended sentence exceeded the minimum sentence permitted by statute.

The trial court remarked that it sounded like Harris might be getting a "good deal" under this agreement and that often such witnesses supplying one link in a chain of custody were "perfunctory" and not critical for proving the case against the defendant. But the trial court also explained that Harris was not obligated to stipulate to anything and that, normally, the procedure would be to hold a hearing to determine if the break in the chain of custody was substantial before ruling on the Commonwealth's pending motions. The trial court then verified that Harris had spoken with his attorney about this

2

matter and agreed to the stipulation. The trial court then confirmed with the parties that the trial would not take place as originally scheduled but would take place five days later. It is unclear from the videotaped record of this hearing why the trial was rescheduled, especially in light of the stipulation as to chain of custody; however, both parties accepted the new trial date without comment at that time.

Five days later, on the new trial date, the parties appeared before the court for a pretrial hearing. Harris had filed a written motion on the preceding day, asking for a continuance to obtain new counsel and stating that he no longer wished to stipulate to the chain of custody. The proposed Agreed Order and Stipulation appear in the written record; however, they are not signed by the trial court or by Harris's counsel, and a written notation states that Harris no longer wished to enter into the stipulation. At this first pretrial hearing, the trial court denied Harris's motion for a continuance as untimely. The trial court did not explicitly rule on his motion to withdraw the stipulation to chain of custody, and Harris did not bring this issue to the trial court's attention at that time.

After the trial court attended to matters unrelated to this case, the parties again appeared before the court immediately before the trial began. The Commonwealth announced it was ready for trial; however, defense counsel stated that it needed to bring some other matters to the trial court's attention before trial. Defense counsel stated that Harris moved to continue the trial, based on the fact that Harris no longer wished to stipulate to the chain of custody and that Harris wished to obtain other counsel. The trial court stated that it had dealt with that before, and the motion was denied (presumably, the trial court was referring to Harris's motion for continuance rather than any request to withdraw the stipulation).

3

The Commonwealth then stated that it was not ready without the stipulation. The trial court stated that Harris had already entered into the stipulation; and that "motion" was denied, too. The parties then discussed how the stipulation would be entered into the record without Harris or his counsel's signature and whether the sentence reduction would be given.[2] The Commonwealth stated that if the court did not read the stipulation to the jury, he would have the officer testify as to the chain of custody. The trial court then stated something to the effect of "that's what we'll do" (whether this meant reading the stipulation or having the officer testify to the chain of custody was not apparent). The prosecutor then asked whether he could at least tender the stipulation for the record, and the court agreed. Shortly after that discussion, the trial began.

First to testify at trial was the paid informant. According to him, Harris sold him crack cocaine on two separate occasions. He further testified that police would give the informant money and send him off to buy drugs in his vehicle, which was wired with an audiotape device to record any transactions. The informant then picked up Harris on each of these two days, gave him money for an order of a certain quantity of crack cocaine, and let Harris out of the vehicle. After the informant drove around the block a few times, he would then pick Harris up again and collect the ordered drugs from him.

Two detectives also testified at trial. Both admitted never to actually seeing Harris sell drugs in person but to monitoring the transactions via the audiotape recording as the transactions occurred. The first detective testified to receiving substances from the paid informant, who had bought them from Harris, and to placing the substances in a sealed envelope in an evidence locker after field testing to be

---

[2]   At the time of this hearing, the trial court indicated that the sentence reduction would not be given as the defendant had "waived" it. But, ultimately, the sentence reduction was given.

transported to the regional crime laboratory for testing. He also testified to receiving the substances back in a sealed envelope from the crime lab following testing. The trial court then interrupted Harris's testimony to inform the jury that the parties had reached an agreement and stipulated to chain of custody, reading to them the tendered stipulation:

(1)    The parties stipulate all evidence obtained by the Pennyrile Narcotics Task Force in this case and delivered to the Western Regional Forensic Laboratory, Madisonville, Kentucky[,] is deemed evidence herein without the necessity of proof.

(2)    The chain of custody is intact and complete.

(3)    The evidence tested is cocaine.

(4)    It is agreed the Court read same to the jury.

Defense counsel did not interrupt to object to the court's reading of the stipulation. Almost immediately after the trial court read the stipulation, the Commonwealth moved to have the bag of substances admitted into evidence; and the trial court called the parties to the bench. Defense counsel simply stated: "Note our previous objection." The trial court overruled the objection without comment.

The jury found Harris guilty on both charged counts and recommended twenty years' imprisonment on each count, to be served consecutively, for a total of forty years' imprisonment. The trial court applied the one-year sentence reduction in accordance with the parties' earlier agreement regarding the stipulation and entered final judgment convicting Harris of both counts and imposing a sentence of thirty-nine years' imprisonment. Harris then filed this timely appeal.

5

## II. ANALYSIS.

Harris contends that the trial court deprived him of his due process rights by denying his request to withdraw the stipulation regarding the chain of custody. He contends that he and his lawyer were confused about how the stipulation would actually work; yet, the trial court allowed him to consent to this stipulation by simply stating, "yes, sir." He also argues that it "appears that defense counsel was attempting to explain the meaning of the stipulation to [Harris] for the first time in open court that day" and that the trial court's comment about the stipulation agreement sounding like a "good deal" may have been misleading since the trial court had not yet determined whether the break in the chain of custody was "substantial." Overall, Harris contends that he did not have sufficient time for reflection or consultation with counsel before agreeing to the stipulation at the hearing held five days before trial began and that he was unsure about proceeding to trial with his attorney on the actual day of trial. So he argues that the voluntariness of the stipulation was doubtful, and the trial court erred in not allowing him to withdraw the stipulation.

It is clear that Harris asked the trial court to withdraw the stipulation and that the trial court denied this request at the hearing immediately before trial. But Harris never argued to the trial court that his agreement to the stipulation was involuntary. In fact, at the hearing in which Harris agreed to the stipulation, the trial court asked whether he had talked with his attorney and explained that Harris was not obligated to make the stipulation. Harris did not tell the trial court that he was confused about the stipulation or that he had not had a chance to discuss the issue further with his attorney. So the

6

trial court had no reason to doubt the voluntariness of his agreement to the stipulation at that point.

Furthermore, when Harris attempted to withdraw from the stipulation on the eve of trial, he stated no specific reasons for his request to withdraw the stipulation in his written motion[3] or in oral objections before the trial court. He did not allege to the trial court, as he does now, that he had entered into the stipulation agreement involuntarily. Nor did he make factual allegations to the trial court that could cast doubt on the voluntariness of his consent to the stipulation—such as not being informed about the contents of the agreement before the hearing, or being "misled" by the trial court's suggestion that the stipulation agreement might be a "good deal."

In light of Harris's failure to state any reasons to the trial court why he should be allowed to withdraw from the stipulation agreement, we find no abuse of discretion in the trial court's denying such relief. Since Harris had previously stated his agreement to the stipulation in open court without indicating any confusion or need to discuss the matter further with his attorney, his eleventh-hour attempt to withdraw from the agreement without stating any reason why he should be allowed to do so was understandably rejected by the trial court.

While we are unaware of any Kentucky cases on point, we note that at least one other jurisdiction has held that it is not necessary to find that a defendant made an

---

[3] Technically, the motion filed was a motion for a continuance, stating as one ground that Harris wished to withdraw from the stipulation agreement.

7

informed, voluntary decision to stipulate to chain of custody and identity of controlled substance where these are not the sole or main issues in dispute.[4]

We reject Harris's argument that his initial agreement to the stipulation as to chain of custody and the identification of the substance as cocaine was tantamount to entering a guilty plea. The Commonwealth still had to prove that the substance was sold by him and, apparently, did so to the jury's satisfaction through the testimony of the informant and the investigating officers. Thus, since Harris had previously indicated in open court that he agreed to this stipulation without any apparent hesitation or confusion and since the Commonwealth had relied upon his agreement to this stipulation when preparing this case for trial, we find no abuse of discretion in the trial court's handling of this evidentiary matter,[5] despite Harris's expressions of a last-minute change of heart.

## III. CONCLUSION.

For the foregoing reasons, the circuit court's judgment is affirmed.

All sitting, except Cunningham, J., not sitting. All concur.

---

[4] *See* People v. Phillips, 840 N.E.2d 1194, 1205 (Ill. 2005) ("In sum, it is not necessary for either the court or counsel to admonish a defendant about the implications and consequences of a stipulation, and defendant's explicit agreement to the stipulation on the record is not required where, as here, (1) defense counsel's decision to stipulate appears to have been a matter of trial tactics and strategy and defendant does not object to counsel's decision, and (2) the State's entire case is not presented by stipulation, the defendant *does* present or preserve a defense, and the stipulation does not include a statement that the evidence is sufficient to convict."). The Phillips court had noted that the defendant had not protested when counsel acquiesced to the prosecutor's mention of the stipulation as to chain of custody and identification of controlled substances and that the key issue in the case was whether the defendant had knowingly possessed illegal drugs, not whether the seized substances were actually illegal drugs or the chain of custody was intact. *See id.* at 1204.

[5] *See* Johnson v. Commonwealth, 184 S.W.3d 544, 551 (Ky. 2005) ("a judge's decision to admit certain evidence is subject to reversal only after a finding that the decision amounted to an abuse of discretion.").

COUNSEL FOR APPELLANT:

Shelly R. Fears
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601-1133


COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky

Kristen N. Logan
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY 40601